IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JEFF L. RIDLING

VS. CIVIL ACTION NO. 3:12CV75–DAS

THE COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

**MEMORANDUM OPINION**

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying the application of Jeff L. Ridling for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court has considered the administrative transcript, the briefs of the parties, and the applicable law and rules as follows:

**I. FACTUAL AND PROCEDURAL HISTORY**

On January 27, 2010, the plaintiff filed a Title II application for a period of disability and disability insurance benefits. On that same date, the plaintiff protectively filed a Title XVI application for supplemental security income. On March 21, 2012, an administrative law judge found the plaintiff not disabled, and on June 19, 2012, the appeals council affirmed that decision. As a result, on August 15, 2012, the plaintiff filed the present action in the United States District Court, arguing that the ALJ and the appeals council committed reversible error.

After considering each of the plaintiff's arguments and hearing oral argument on the matter, the court finds substantial evidence exists to support the ALJ's decision.

## II. DISCUSSION

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step

sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of her past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b) (2012).

[4] 20 C.F.R. §§ 404.1520(c) (2012).

[5] 20 C.F.R. §§ 404.1520(d) (2012). If a plaintiff's impairment meets certain criteria, that plaintiff's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2012).

[6] 20 C.F.R. §§ 404.1520(e) (2012).

[7] 20 C.F.R §§ 404.1520(f)(1) (2012).

3

prove that he cannot, in fact, perform that work.[8]

In the present case, there are five issues before the court: (1) whether the ALJ failed to follow the instructions provided by the Program Operations Manual System (POMS); (2) whether the ALJ erred when he relied on the opinion of a non-examining state agency consultant rather than a consultative examiner; (3) whether the ALJ erred when he found the plaintiff did not meet sections 12.04 and 12.06 of the Listings; (4) whether the ALJ erred when he found the plaintiff did not meet section 11.02 of the Listings; and (5) whether the appeals council erred when they failed to reverse based on (a) side-effects of the plaintiff's medications; (b) and the ALJ's alleged failure to consider the aggravating effects of the plaintiff's non-severe impairments.

The court will address each issue in turn.

## 1.  Program Operations Manual System (POMS)

With his first argument, the plaintiff contends the ALJ erred when he failed to follow the instructions provided by the Program Operations Manual System ("POMS").[9] Specifically, POMS provides that the Administration is to consider the narrative portions of a psychological assessment when developing an RFC. The plaintiff argues the ALJ erred when gave weight to a state agency consultant's opinion that – according to the plaintiff – did not consider the narrative portion of the consultative examiner's assessment but rather "spun" it and "checked the boxes," finding the plaintiff's limitations only mild or moderate. The plaintiff argues that the narrative

---

[8]*Muse*, 925 F.2d at 789.

[9]POMS is a publicly available internal SSA document used by social security employees to assess social security claims.

4

aspects of Dr. Small's report support a finding more severe than either mild or moderate.

In support of his argument, the plaintiff refers to the fifth circuit's language in *Newton v. Apfel*. In *Newton*, the court wrote: "[A]n agency must follow its own procedures, even where the internal procedures are more rigorous than would otherwise be required." The court agrees with this proposition, but the court does not agree with the plaintiff's interpretation of the POMS section at issue. Section DI-25020.010(B)(1) of POMS provides that *adjudicators* are to look to the narrative aspects of the functional capacity assessment when determining an RFC. In this instance, the plaintiff attempts to apply the language of that section to the state agency consultant as well, and the language simply does not provide for that.

## 2. Non-examining or Consultative examiner

Next, the plaintiff argues the ALJ erred when he placed greater weight on the opinion of Dr. Morgan, the non-examining state agency consultant, rather than the opinion of Dr. Small, the consultative examiner. After examining the record, the ALJ's opinion, and hearing oral argument on the matter, the court is not convinced the ALJ gave Dr. Morgan's opinion more weight than that of Dr. Small. While the ALJ did explain she was giving Dr. Small's opinion "some weight," and Dr. Morgan's opinion "great weight," it is clear she did this because she discounted those portions of Dr. Small's opinion that relied on the plaintiff's subjective complaints. The ALJ found that the plaintiff lacked credibility, and substantial evidence certainly supports this finding.[10] Otherwise, the opinions of both Dr. Small and Dr. Morgan are

---

[10]For example, as the government points out, the plaintiff reported to Dr. Small that he stayed in his bedroom all day, avoided socializing, and could not drive or prepare meals. However, on an adult function report, he wrote that he cooked his own meals daily, visited friends, shopped, performed yard work, and drove a car.

largely consistent, and thus, the plaintiff's argument has no merit.

### 3. Listings 12.04 and 12.06

With respect to the Listings 12.04 and 12.06, the plaintiff argues the ALJ erred when he failed to find his agoraphobia caused him to decompensate often enough to satisfy the "C" criteria. The "C" criteria require in pertinent part that to meet either 12.04 or 12.06, the plaintiff must show "[r]epeated episodes of decompensation, each of extended duration." In support of his argument, the plaintiff points to Dr. Small's report, but as with the argument addressed immediately *supra*, the aspects of Dr. Small's report on which the plaintiff attempts to rely are those portions created based solely on the plaintiff's subjective complaints. And as noted, the ALJ found the plaintiff lacked credibility.

On the other hand, after examining Dr. Small's report, Dr. Morgan noted only "one or two" episodes of decompensation, nowhere near enough to satisfy the strict criteria of the Listings. "[R]epeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. pt. 404, subpart P, app. 1, § 12.04 (C)(4). The plaintiff points only to his own statements and those of his wife that he has "panic attacks" when he leaves his home or thinks of leaving home. Because there is no evidence to support his contention that he meets the "C" criteria other than his own testimony, the plaintiff has failed to show the ALJ erred. And because Dr. Morgan found he possibly had only "one or two" episodes of decompensation, there is substantial evidence to support the ALJ's decision that he did not meet either Listing 12.04 or 12.06.

## 4. Listing 11.02

The plaintiff argues next that the ALJ erred when he failed to find the plaintiff met Listing 11.02. To meet Listing 11.02 and thus be considered disabled, a plaintiff must show "convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. 404, Subpart P, App. 1 § 11.02.

In the present case, the plaintiff argues he meets the Listing, and in support of his argument points out that "[e]very diagnosing source, quite contrary to the ALJ's finding, indicates seizure disorder." Looking to the ALJ's decision, however, it is clear he considered the seizure disorder, and in fact, found it to be a severe impairment at step two of his evaluation. However, despite any records reporting anything arguably consistent with the requirements mandated by the Listing, it is clear the seizure disorder was controlled with medication. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). As the government explains, the plaintiff's treating physician reduced the cost of his medication so he could become compliant, and afterwards, the medication controlled the disorder. Accordingly, substantial evidence supports the ALJ's decision that the plaintiff did not meet Listing 11.02.

### 5. Appeals Council

Finally, the plaintiff argues that the Appeals Council improperly denied his request for review. Specifically, the plaintiff argues that the Appeals Council erred when it failed to reverse the ALJ's decision that did not account for the alleged side-effects of the plaintiff's medications. However, as the government points out, while the ALJ did refer to the plaintiff's description that the seizure medication made him feel "distant," the plaintiff did not complain to any physician regarding this alleged problem. The law is clear that such an omission may not be overcome with subjective statements made after the fact. *See Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994) (claimed side-effects of medication never discussed with physician nor change of medication requested); *see also Jones v. Commissioner*, 336 F.3d 469, 476-77 (6th Cir. 2003) (failure to discuss crying spells and panic attacks with doctor is a basis for discounting testimony).

The plaintiff next argues the Appeals Council erred when it failed to reverse the ALJ for his alleged failure to consider the aggravating effects of the plaintiff's non-severe impairments. In support of this argument, the plaintiff points to his chronic back pain, post-traumatic osteoarthritis, carpel tunnel syndrome, post-surgical left ankle pain, and hernia. The court finds, however, that there is virtually no credible evidence in the record whatever to support these claims. This is not a situation in which the ALJ found these impairments to exist but merely found they were not severe as per *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985). After examining the ALJ's decision and the entire record, it is clear the ALJ did not find these alleged impairments exist at all, and the court finds substantial evidence supports that finding. The only evidence within the record to support a claim related to the above-described "impairments"

comes from the testimony of the plaintiff himself, and because substantial evidence supports the ALJ's finding that the plaintiff was not credible, the appeals council did not err.

The plaintiff's final argument is the appeals council erred when it failed to reverse the ALJ when he accepted the VE's job descriptions as sedentary given in response to the ALJ's hypothetical questions. Referring to appendix C of the Dictionary of Occupational Titles, the plaintiff argues that because the jobs listed as sedentary also included a production rate, they should have been listed as light. Appendix C provides that jobs described as sedentary within the DOT should be rated light "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." While the plaintiff makes the statement that the jobs provided by the VE required a "production rate," he provides no evidence to support such an assertion, and the plaintiff did not address the issue during oral argument. Without more, the court will not reverse the decision affirming the ALJ's decision made at step five.

The court, therefore, finds that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 3rd day of July, 2013.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE